IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

SHAKUR ALI ABDULLAH AL-AMIN,        )
                                     )
        Plaintiff,                   )
                                     )
v.                                   )    No. 3:12-cv-00249
                                     )
TDOC COMMISSIONER, et al.,           )    Judge Sharp
                                     )
        Defendants.                  )

**MEMORANDUM**

Plaintiff Shakur Ali Abdullah Al-Amin, a prisoner incarcerated at Riverbend Maximum Security Institution (RMSI) in Nashville, Davidson County, Tennessee, has filed a *pro se* complaint purporting to assert claims under 42 U.S.C. § 1983 against approximately fifty defendants (ECF No. 1). The complaint is before the Court for an initial review pursuant to 28 U.S.C. §§ 1915(e) and 1915A. Also before the Court are two motions for preliminary injunction (ECF Nos. 6 and 9). By separate order, the Court has granted the plaintiff's Application to Proceed *in Forma Pauperis*.

**I.      Initial Screening of the Complaint**

    **A.      Standard of Review**

Under the Prison Litigation Reform Act, this Court is required to conduct an initial screening of a prisoner's civil complaint if, as in this case, it is filed *in forma pauperis* or if it seeks redress from a governmental entity or official. 28 U.S.C. §§ 1915(e)(2), 1915A(a). After the initial screening, the Court must *sua sponte* dismiss the complaint or any portion thereof if it is determined to be frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief from a defendant immune from such relief. *McGore v. Wrigglesworth*, 114 F.3d 601, 612 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations "must be enough to raise a right to relief above

the speculative level." *Twombly*, 550 U.S. at 555; *see id.* ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."). Thus, the court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly / Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

**B.    Factual Allegations**

In his lengthy, rambling complaint, the plaintiff names as defendants numerous prison and Tennessee Department of Corrections officials, corrections officers, the chaplain and assistant chaplain of RMSI, as well as the Clerk of Court for Davidson County, Judge Amanda McClendon, and Clerk and Master Cristi Scott, among others.

The plaintiff alleges that certain items of personal property were stolen or damaged when he was placed in administrative segregation. He claims his television was taken in retaliation for the grievances he filed relating to his lost or damaged belongings, but he does not indicate by whom. He filed additional grievances and received various write-ups allegedly in retaliation for filing grievances, but again he has not stated by whom, nor does he state any facts in support of his conclusion that the defendants' actions were retaliatory.

The plaintiff alleges that he was given the wrong medication when he was "in medical." He also complains that he had four wisdom teeth pulled, but one of the teeth was pulled incorrectly, leaving him in great pain afterwards. He signed up for sick call every day after that but was told by Dentist Lisa that they could not do anything for him. On another day he was in "real pain" in his chest and pushed the call light.

The plaintiff alleges that Officer Mosley told him to go lie down, and that they were not answering his call light.

He claims that he was placed on maximum security for being involved in two assaults with injuries, but that he was actually only found guilty of one assault. He claims his signature was forged on the charge sheets for the assaults. He alleges this too was "clear retaliation."

Further, when he came out of administrative segregation ("the hole") he again found that all his belongings had been stolen or given away.

The plaintiff has very vague and largely unintelligible claims involving Chaplain Jeannie Alexander concerning his signing up to see Sunnah Muslim volunteers but never actually receiving visits from volunteers. The plaintiff alleges that during Ramadan "after a grievance and many request" his name was "taken off volunteer list each time and Ramadhan feast list. Volunteer never came even though inmate request from chaplain and Creech says I was on list." Officer Creech allowed him to call a volunteer who was supposed to be a Sunnah Muslim. The plaintiff reached an answering machine and thus allegedly discovered that the place he was attempting to call was in fact a "Shiah Musjid." He claims this was discrimination too. Other claims relating to this Shia/Sunnah distinction are unintelligible. He further complains that Chaplain Alexander did not assist him in "placing Islamic burial forms" as she told him she would do. He claims Officer Creech placed the burial form in the computer and in his file, but incorrectly noted that the plaintiff was a Shiite rather than a Sunnah Muslim. The plaintiff insisted that Officer Creech correct this mistake. He does not state whether Officer Creech complied with this demand. The plaintiff also claims that he spoke to Chaplain Alexander confidentially and that he mailed letters to a Sunnah volunteer through her, but that the chaplain "slandered/defamed" his character to Musjids (mosques) and other prisons and within RMSI.

The plaintiff alleges that during Ramadan, Sgt. Shieldcamp "took meals for Ramadhan and took out peanut butter; bread; juice; jelly; milk out. Each day. . . . Sgt. Shieldcamp continued to do this throughout Ramadhan." (ECF No. 1, at 4.) The plaintiff also claims Sgt. Shieldcamp stated, "Hell Yeah I did[;] if it was up to me [the] terrorist wouldn't eat nothing." (*Id.*) In addition, on one occasion the plaintiff asked Officer Mosley for a "no meat" tray, for which he was on the list, but was handed a tray and told he was "not special" and "would eat tray or receive nothing." (ECF No. 1, at 6.) On another occasion, Officer

Tryone gave him Kool-Aid, and lied and told him it did not have Yellow #5 in it.  The plaintiff's face tag on his cell door specifies he is not to have foods with pork, meat or Yellow #5.  On a third occasion, Officer Yebuah told the plaintiff he should put down his Qur'an and pick up a Bible; Officer Yebuah also told the plaintiff he would like to burn any Qur'an he sees.  Other officers have allegedly made "prejudice comments" and stepped on the plaintiff's prayer rug during a search of his cell.

The plaintiff complains that his social security number was on his Islamic Burial form, and this form, with his social security number, was placed on the internet by Clerk and Master Cristi Scott.

The plaintiff states that he legally changed his name (from Russell Brown to Shakur Ali Abdullah Al-Amin) and obtained a court order to that effect, but the order did not have his middle initial or name on it and is apparently therefore incorrect, and prison officials have not helped him notify the various agencies he needs to notify in order to change his name on his social security records, birth certificate, and "vital statics."  He claims Chaplain Alexander "called people told them to stop legal court order name change."  (ECF No. 1, at 5.)

The plaintiff complains that various corrections officers have come into the pod where he is housed and ordered him to stand even after he told them "I'm a practicing Muslim and this was against religion!"  (ECF No. 1, at 5.)

The plaintiff alleges that since December 16, his mail has been tampered with and that he has been unable to receive mail coming in addressed to him by his new legal name.

The plaintiff alleges that photographs and video of him naked were taken without his permission by certain corrections officers and posted on the internet.

The plaintiff alleges that he was assaulted by various corrections officers, one of whom rubbed his arm, and others of whom pulled him upstairs when he was in leg irons and handcuffs, slammed him against the wall, and pushed him in his cell.  After that, he had to put his arms through the pie flap in his cell door to have his handcuffs removed.  The officers who removed them pulled on his arms and pulled on the cuffs, and closed the pie flap on one of his arms, causing bruises.

The plaintiff also complains very generally about the showers being filthy, being denied access to proper cleaning products, being denied access to the courts and to the library, and generally being denied contact with the outside world through phone calls and visits.  His complaint does not set forth any

specific factual allegations in support of these claims.

### C. Analysis of Claims

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). The plaintiff does not identify which rights he believes have been violated; the Court, construing the complaint liberally, presumes that the plaintiff intends to state claims under the First Amendment for violation of the right to exercise his religion freely and to access the courts, and under the Eighth Amendment generally for violation of his right not to be subjected to cruel and unusual punishment

#### *1. First Amendment – Free Exercise Claim*

While "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," *O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted), prisoners are entitled under the First and Fourteenth Amendments to a reasonable opportunity to exercise their religion. *Hudson v. Palmer*, 468 U.S. 517, 523 (1984) (citation omitted). To establish that this right has been violated, a plaintiff must show that: (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) his belief is sincerely held, and (3) the defendant's behavior infringes upon this practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224–25 (6th Cir. 1987). Prison officials may impinge on these constitutional rights only if the restriction "is reasonably related to legitimate penological interests." *Flagner v. Wilkinson*, 241 F.3d 475, 483 (6th Cir. 2001) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

As indicated above, the plaintiff alleges fact that, if true, suggest that Sgt. Shieldcamp intentionally deprived the plaintiff of foods that he would have been able to eat during Ramadan in observance of his religion, severely limiting the quantity of food available to him during that time. The plaintiff's allegations indicate that Sgt. Shieldcamp thereby intentionally burdened the plaintiff's practice of his religion. The Court finds that, for purposes of the initial screening, the plaintiff has stated a claim

under § 1983 against Officer Shieldcamp for infringement of the plaintiff's First Amendment rights.

The plaintiff makes other claims of alleged violation of his freedom of religion, including objections to (1) the alleged discrimination arising from his difficulties in effecting an official name change and the prison's failure to recognize his name change by issuing him a new I.D. card and face sheet reflecting his new name; (2) once having his request for a "no meat" tray refused and being told that he would eat the food he was given or go without; (3) being required to stand during an inspection of his cell; (4) being denied mail sent to him using his new name; (5) having corrections officers step on his prayer rug during inspections of his cell; and (6) being told in one conversation with another corrections officer that the officer would like to burn any Qur'an he sees. The plaintiff also vaguely alleges some difficulty with Chaplain Alexander in obtaining "burial forms" correctly reflecting that he is a Sunnah Muslim, and in receiving visits from other Sunnah Muslims.

The Court finds that these allegations, which are generally vague and in many instances difficult to understand, are insufficient to support any additional claims for violations of the plaintiff's First Amendment right to practice his religion. First, The Sixth Circuit has repeatedly found no merit to a prisoner's claim that "prison officials violated his First Amendment rights by refusing to use his religious name." *Spies v. Voinovich*, 173 F.3d 398, 406 (6th Cir. 1999); *see also Shuaib v. Stiddum*, No. 88–5227, 1988 WL 86126, at *1 (6th Cir. Aug. 18, 1988) ("[T]he failure to refer to an inmate by a legally-adopted name simply is not violative of the [F]irst [A]mendment right to freedom of religion.") (citing *Akbar v. Canney*, 634 F.2d 339 (6th Cir. 1980)); *see also Porter v. Caruso*, 479 F.Supp.2d 687, 700 (W.D. Mich. 2007) (the Constitution does not guarantee a right "that prison officials will refer to him only by his chosen appellation.").

Second, the courts have uniformly found that isolated acts or omissions do not constitute a substantial burden on religious freedom. *Gunn v. Kentucky*, No. 5:07CV–P103–R, 2010 WL 2555756, at *5 (W.D. Ky. June 18, 2010); *see Randall v. McLeod*, No. 95–10106, 1995 WL 581973, at *4 (5th Cir. Sept. 15, 1995) (affirming the district court's dismissal of First Amendment claim based on plaintiff's not getting a pork-free meal on two occasions); *White v. Glantz*, No. 92–5169, 1993 WL 53098, at *2 (10th Cir. Feb.25, 1993) (finding that an "isolated occurrence of being given two meals with green beans and bacon" did not violate a Muslim inmate's First Amendment rights); *Greenberg v. Hill*, No. 2:07–CV–1076,

2009 WL 890521, at *6 (S.D. Ohio Mar. 31, 2009) ("[I]solated or sporadic government action or omission is *de minimis* and does not constitute a 'substantial burden. "). Likewise, courts have denied claims that missing a single meal violates the free exercise of religion. *Bell v. Dretke*, No. G-04-530, 2006 WL 3447657, at *1 (S.D. Tex. Nov.21, 2006) ("Missing one meal hardly meets this threshold; even on a regular, permanent basis, it has been held that two meals a day may be an adequate amount of food."). This Court likewise finds that a single isolated incident in which the plaintiff was denied a "no meat" tray did not place an undue burden upon his practice of his religion. For the same reasons, none of the other alleged infringements supports a First Amendment claim either. The actions complained of were either *de minimis* and therefore did not substantially burden the plaintiff's ability to practice his religion, or are not alleged with sufficient specificity to support the plaintiff's claim.

### 2. *First Amendment – Retaliation*

The plaintiff alleges that his television was confiscated in retaliation for filing a grievance—"T.V. was taken in retaliation for grievance." (ECF No. 1, at 3.) He complains that he was subject to other retaliatory actions including being written up for infractions he did not actually commit.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *Thaddeus–X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.*; *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). Filing a grievance is constitutionally protected conduct under the First Amendment. *Id.*; *Hall v. Nusholtz*, No. 99–2442, 2000 WL 1679458, at *2 (6th Cir. Nov. 1, 2000). The plaintiff alleges that he filed several grievances against a variety of prison staff. The Court therefore will assume that the plaintiff has adequately alleged the first element of a retaliation claim.

With respect to the adverseness factor, the law is clear that this inquiry is an objective one, and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "capable of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002). Certain deprivations are so *de minimis*

that they do not rise to the level of being constitutional violations. *See, e.g., Thaddeus–X*, 175 F.3d at 396, 398 (threat of physical harm not sufficiently adverse); *Smith v. Yarrow*, 78 F. App'x 529, 542–43 (6th Cir. 2003) (threat to change drug test results); *Green v. Caruso*, No. 1:10–cv–958, 2011 WL 1113392, at *9 (W.D. Mich. March 24, 2011) (confiscation of plaintiff's television, denying him access to law library on two occasions, denial of grievances, and transfer to another facility were not sufficiently adverse). In this case, the actions complained of were not sufficiently adverse to satisfy the first element of the test. Further, even if the actions were not *de minimis*, the plaintiff here has not alleged any facts, beyond his merely conclusory statements, that the actions were motivated by the protected conduct. Thus, the plaintiff cannot establish the third element of the claim either.

To the extent the plaintiff intends to state a due-process claim based on the confiscation of his television or other items that disappeared after he returned from segregation, such a claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure. *Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984). The plaintiff has the burden of pleading and proving the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of a § 1983 due-process action. *Brooks v. Dutton*, 751 F.2d 197 (6th Cir.1985). The plaintiff has not alleged that state post-deprivation remedies are inadequate, so he has not sustained his burden in this case

### 3. *First Amendment – Access to the Courts*

The plaintiff claims, in wholly conclusory fashion, that he has been denied access to the courts and access to the law library. It is well established that prisoners have a constitutional right of access to the courts under the First and Fourteenth Amendments. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). To state a claim however, an inmate must show that any barrier that impeded his access to the courts

caused actual injury in his pursuit of a legal claim. *Lewis v. Casey*, 518 U.S. 343, 351 (1996); *Talley–Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996). An inmate must make a specific claim that he was adversely affected or that the litigation was prejudiced. *Vandiver v. Niemi,* No. 94–1642, 1994 WL 677685, at *1 (6th Cir. Dec. 2, 1994). The plaintiff here has not alleged that he was prejudiced in pursuing any legal action as a result of being denied access to the law library or to his legal mail. Consequently, the plaintiff fails to state an access-to-the-courts claim.

### *4. Eighth Amendment Claim – Physical Force*

The plaintiff complains about being dragged and pushed and shoved by certain corrections officers on one occasion, which resulted in bruises on his arms. The question is whether the allegations are sufficient to state a claim based on the Eighth Amendment's prohibition of "cruel and unusual" punishment.

The Supreme Court has stated that the "core judicial inquiry" in an excessive-force claim is "not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Wilkins v. Gaddy*, 130 S. Ct. 1175, 1178 (2010) (quoting *Hudson*, 503 U.S. at 7). The degree of injury alleged nonetheless remains a relevant consideration:

> This is not to say that the "absence of serious injury" is irrelevant to the Eighth Amendment inquiry. [T]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation. The extent of injury may also provide some indication of the amount of force applied. . . . As we stated in *Hudson* [*v. McMillian*, 503 U.S. 1, 9 (1992)], not "every malevolent touch by a prison guard gives rise to a federal cause of action." "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Ibid.* (some internal quotation marks omitted). An inmate who complains of a "push or shove" that causes no discernible injury almost certainly fails to state a valid excessive force claim. *Ibid.*

*Id.* (some internal quotation marks and citations omitted).

Taken as true, the plaintiff's allegations of force are not sufficient serious to give rise to a claim under the Eighth Amendment. The actions themselves, while clearly not friendly, were simply not malicious or sadistic enough to cause a constitutional violation, particularly in light of the fact that the plaintiff does not even allege that he was injured, other than to state that Nurse Doreen "came, reviewed arm and bruises." (ECF No. 1, at 7.) In other words, whatever force was used, it resulted, at most, in

such minor injury that the plaintiff cannot state a claim for cruel and unusual punishment.

### 5. *Supervisor Liability*

Several of the putative defendants in this case are either not mentioned at all by name in the fact section of the plaintiff's complaint, or are referenced in passing only. These include, among others, the Commissioner of the Tennessee Department of Corrections, the Warden and Deputy Ward of Riverbend, and Court Clerk Richard Rooker. "Because § 1983 liability cannot be imposed under a theory of *respondeat superior*, proof of personal involvement is required for a supervisor to incur personal liability." *Miller v. Calhoun County*, 408 F.3d 803, 817 n.3 (6th Cir. 2005). "At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). To the extent any of the defendants are named solely because of their supervisory role within the corrections system, and are not alleged to have personally taken any action that violated the plaintiff's rights, the plaintiff fails to state a viable claim under § 1983 against those defendants.

### 6. *The Plaintiff's Remaining Claims*

The Court has read the plaintiff's complaint carefully and finds that none of the other allegations, read together or in combination, suffices to raise the inference of a violation of the plaintiff's constitutional rights. With respect to verbal threats and harassment, the law is clear that these "are necessarily excluded from the cruel and unusual punishment inquiry." *Northington v. Jackson*, 973 F.2d 1518, 1524 (10th Cir. 1992); *Davis v. Mich. Dep't of Corr.*, 746 F. Supp. 662, 667 (E.D. Mich. 1990) ("Plaintiff alleges nothing more than verbal abuse, which quite clearly does not implicate constitutional concerns."). The plaintiff's other concerns are insufficiently serious to implicate constitutional or other federal rights. *Cf. Miller v. Wertanen*, 109 F. App'x 64, 65 (6th Cir. 2004) ("The district court properly concluded that one instance of deprivation of books, linens, food trays, and mail did not violate the Eighth Amendment, and that verbal harassment was not punishment that violated Miller's constitutional rights.").

Finally, to the extent the plaintiff seeks to make out a state-law claim for defamation against Chaplain Alexander, the Court finds that the allegations are not specific enough to state a viable claim. Moreover, the defamation claim is not so closely related to the sole viable § 1983 claim against Officer Shieldcamp that it could be deemed to "form part of the same case or controversy." 28 U.S.C. § 1367(a).

The exercise of supplemental jurisdiction over the defamation claim is therefore not warranted; that claim will be dismissed without prejudice. To the extent the plaintiff intended to assert other state-law claims, which is not clear, the same analysis would apply.

In sum, because the Court has found that the complaint states a viable claim under the First Amendment against Officer Shieldcamp, the plaintiff will be permitted to pursue that claim. However, because the plaintiff fails to state a claim under 42 U.S.C. § 1983 against the other 45 defendants named in the complaint, an order dismissing those claims will be entered. Any state-law claims will be dismissed without prejudice.

## II. The Motions for Preliminary Injunction

After filing his complaint, the plaintiff filed two separate motions for preliminary injunction with supporting memoranda of law (ECF No. 6, ECF No. 9), along with the plaintiff's declarations in support of his motions and proposed orders. In his motions, which are virtually identical,[1] the plaintiff asserts that he is being denied "access to the courts and outside world," and also claims that he has been "physically beaten for no reason whatsoever." (ECF No. 6, at 2.) He argues that he is entitled to a preliminary injunction to require the defendants to "rescind the arbitrary practice of blocking access to the courts, law library, calling family telling them not to answer, not allowing use of phone etc." (ECF No. 6, at 4.) In his proposed "Order to Show Cause for Preliminary Injunction," the plaintiff further alleges that various defendants are interfering with his right to use the phone to contact a lawyer, go to the rec yard, clean his cell, and "take shower etc as all other inmates are able to do," and he also asserts that two officers "patted [him] on behind" when he was in leg irons, and sent him "tag trays with white substance etc." (ECF No. 6-2, at 1.) In the plaintiff's declaration, he does not state facts; rather he states the relief he seeks:

> 2. Stop sending pork trays and tags trays with TDOC# or cell# on them etc.
> 3. Stop sexually harassment of touching period beside pat downs, 2-21-12 incident with injunction on cameras already asked for[;] stop calling harassment of family and friends.
> 4. Stop contact with above staff in which retaliation write ups are given to keep me on max etc.

(ECF No. 8-2.)

---

[1] The only substantial difference between the two sets of documents is that the plaintiff failed to sign or date his first declaration, while the second declaration is appropriately signed.

The motions for preliminary injunction do not address the one claim in the complaint the Court has found to be viable, or the actions of the one defendant named in that claim.[2] The Court has found that the plaintiff has not stated viable claims in his complaint based on the alleged withholding of mail, physical abuse, or denial of access to the courts. To the extent the motions for preliminary injunction seek to redress those claims, they are rendered moot by the dismissal of the claims. To the extent the motions for preliminary injunction address claims that are not raised in the complaint, they are inappropriate in this case. For both these reasons, the motions will be denied.

**III.    Conclusion**

An appropriate order will be entered in accordance with this Memorandum, dismissing all the claims in the complaint except the First Amendment claim against Officer Shieldcamp, and denying the motions for preliminary injunction.

Kevin H. Sharp
United States District Judge

---

[2] The Court also notes that the claim against Officer Shieldcamp involves actions taken during the period of Ramadan, which occurred in August 2011. There is no continuing violation of that conduct that would warrant injunctive relief.